UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY ANN WILLIAMS, ex rel. T.D.B., Jr., a minor,<br><br>Plaintiff,<br><br>v.<br><br>SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | Case No. 3:19-cv-00064<br><br>Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |

To: The Honorable William L. Campbell, Jr., District Judge

### REPORT AND RECOMMENDATION

Plaintiff Kimberly Ann Williams filed this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration (SSA) denying her application on behalf of her minor son, T.D.B., Jr., for supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–83f. (Doc. No. 1.) The Court referred this action to the Magistrate Judge to dispose or recommend disposition of any pretrial motions. (Doc. No. 4.) Now pending is Williams's motion for judgment on the administrative record to reverse the Commissioner's decision and remand the action for rehearing. (Doc. No. 20.) The Commissioner has responded in opposition (Doc. No. 25), and Williams has filed a reply (Doc. No. 27). Having considered the parties' filings and the administrative record as a whole, and for the reasons that follow, the Magistrate Judge will recommend that Williams's motion be granted, that the ALJ's decision be reversed, and that this case be remanded for rehearing and further administrative proceedings consistent with this Report and Recommendation.

**I. Background**

    **A. Williams's Supplemental Security Income Application on Behalf of T.D.B., Jr.**

Williams applied for SSI on behalf of T.D.B., Jr., on August 14, 2015. (AR 81, 93.[1]) She alleged that T.D.B., Jr., had been disabled since August 14, 2015, as a result of asthma and a learning disability. (AR 81.) The Commissioner denied Williams's application initially and on reconsideration. (AR 93, 110.) At Williams's request, an administrative law judge (ALJ) held a hearing on October 27, 2017. (AR 42–78.) Williams and T.D.B., Jr., appeared without representation and testified. (*Id.*)

    **B. The ALJ's Findings**

On April 27, 2018, the ALJ issued a written decision finding that T.D.B., Jr., was not disabled within the meaning of the Social Security Act and applicable regulations and denying the application for SSI. (AR 21–36.) The ALJ made the following enumerated findings:

1. The claimant was born on September 19, 2003. Therefore, he was a school-age child on August 14, 2015, the date application was filed, and is currently an adolescent (20 CFR 416. 926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since August 14, 2015, the application date (20 CFR 416.924(b) and 416.971 *et seq.*).

3. The claimant has the following severe impairments: asthma, attention deficit hyperactivity disorder (ADHD), learning disorder, and generalized anxiety disorder (20 CFR 416.924(c)).

                           \*      \*      \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

                           \*      \*      \*

---

[1] The Transcript of the Administrative Record (Doc. No. 17) is referenced herein by the abbreviation "AR." All page numbers cited in the AR refer to the Bates stamp at the bottom right corner of each page.

5. The claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings (20 CFR 416.924(d) and 416.926a).

* * *

6. The claimant has not been disabled, as defined in the Social Security Act, since August 14, 2015, the date the application was filed (20 CFR 416.924(a)).

(AR 24–36.) The Social Security Appeals Council denied Williams's request for review on July 26, 2018, making the ALJ's decision the final decision of the Commissioner. (AR 11–15.)

### C. Appeal Under 42 U.S.C. § 405(g)

The SSA granted Williams's request for additional time to file a civil action (AR 1), and Williams timely filed her complaint seeking review of the ALJ's decision on January 9, 2019 (Doc. No. 1). The Court has jurisdiction under 42 U.S.C. § 405(g). Williams, who is now represented by counsel, argues that remand is required because the ALJ's written decision fails to comply with SSA regulations and is not supported by substantial evidence. (Doc. No. 21.) Specifically, Williams argues that the ALJ: (1) did not allow her to call witnesses to testify on T.D.B., Jr.'s behalf; (2) failed to properly consider medical records and opinions from treating sources Dr. Robert R. Berberich and Centerstone Community Mental Health; (3) failed to properly evaluate T.D.B., Jr.'s subjective complaints; and (4) failed to properly evaluate evidence regarding T.D.B., Jr.'s functional limitations, primarily by relying too heavily on the examination and opinion evidence of consulting psychologist Dr. E-Ling Cheah and failing to consider T.D.B., Jr.'s limitations in caring for himself emotionally. (*Id.*) The Commissioner responds that the ALJ complied with all applicable SSA regulations and that her decision is supported by substantial evidence. (Doc. No. 25.) Williams replies that the ALJ violated SSA regulations regarding analyzing medical opinions from treating sources at least with respect to Dr. Berberich, if not Centerstone, by completely failing to mention or consider Dr. Berberich's opinions regarding

T.D.B., Jr.'s functional limitations. (Doc. No. 27.) She also reiterates her arguments regarding whether she was permitted to call witnesses to testify during the hearing and the ALJ's analysis of Dr. Cheah's evidence and T.D.B., Jr.'s subjective complaints and functional limitations. (*Id.*)

### D. Review of the Record

The ALJ and the parties have thoroughly described and discussed the medical and testimonial evidence in the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## II. Legal Standards

### A. Standard of Review

This Court's review of an ALJ's decision is limited to determining (1) whether the ALJ's findings are supported by substantial evidence and (2) whether the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405–06 (6th Cir. 2009)). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (alteration in original) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence is less than a preponderance but "more than a mere scintilla" and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (same). Further, "[t]he Social Security Administration has established rules for how an ALJ must evaluate a disability claim and has made promises to disability applicants as to how their claims and medical evidence will be reviewed." *Gentry*, 741 F.3d at 723. Where an ALJ fails to follow those rules or regulations, "we find a lack of substantial evidence, 'even where the

conclusion of the ALJ may be justified based upon the record.'" *Miller*, 811 F.3d at 833 (quoting *Gentry*, 741 F.3d at 722).

B. **Determining Disability at the Administrative Level**

Title XVI of the Social Security Act, which governs supplemental security income, "is a welfare program . . . [that] provides SSI benefits to financially needy individuals who are aged, blind, or disabled regardless of their insured status." *Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). A parent may seek supplemental security income on behalf of a child who is disabled, which is defined in this context as "[a]n individual under the age of 18" who "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). ALJs employ a three-step evaluation process to determine if a child is disabled. 20 C.F.R. § 416.924(a). "First, the child must not be engaged in substantial gainful activity; second, the child must have a severe impairment; and third, the severe impairment must meet, medically equal or functionally equal one of the impairments found in 20 C.F.R. Part 404, Subpart P, Appendix 1." *Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing 20 C.F.R. § 416.924).

To determine whether an impairment or combination of impairments results in limitations that "functionally equal" a listed impairment, an ALJ must consider the claimant's limitations in the following six areas or "domains" of functioning: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a. A finding of functional equivalence, and thus disability, "is warranted when the child has an extreme limitation in one area of functioning or marked limitations in two areas of functioning." *Elam*, 348 F.3d at 128 (citing *id.*). A limitation is "extreme" under SSA regulations

if the "impairment(s) interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). While extreme "is the rating [the SSA] give[s] to the worst limitations[,] . . . [it] does not necessarily mean a total lack or loss of ability to function." *Id.* SSA regulations further provide that a "marked" limitation exists where the "impairment(s) interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). It "means a limitation that is 'more than moderate' but 'less than extreme.'" *Id.*

**III.     Analysis**

Williams's principle arguments relate to whether she was afforded an opportunity to present witnesses and the ALJ's analysis of treating source evidence and T.D.B., Jr.'s subjective complaints. While she has not shown that the ALJ failed to follow SSA regulations regarding witness testimony, the Magistrate Judge finds that remand is warranted because the ALJ violated the treating source rule and that violation was not harmless.

**A.     Presenting Witnesses**

SSA regulations provide that claimants "may . . . present and question witnesses" during an ALJ hearing. 20 C.F.R. § 416.1429. Williams argues that she brought two witnesses with her on the day of T.D.B., Jr.'s hearing but those witnesses "were not permitted in the hearing room, and were not called to testify." (Doc. No. 21, PageID# 858.) However, as the Commissioner points out, nothing in the hearing transcript suggests that Williams asked the ALJ to call her witnesses, and it is not clear that the ALJ was even aware that Williams wished to do so. Williams has not cited any authority to support a finding that remand is appropriate under these circumstances, and the Magistrate Judge is not aware of any. *Contra Cockrell v. Colvin*, No. 13-CV-757, 2014 WL 12789690, at *7 (D.N.M. July 10, 2014) (finding that claimant was not denied opportunity to present witnesses where claimant's wife was excluded from hearing room but hearing transcript

did not provide "any indication that [claimant] ever called his wife to testify, or that the ALJ denied such a request"). Williams therefore has not shown that remand is warranted on this ground. To the extent the Court finds that remand is appropriate on other grounds, Williams may seek to present and question witnesses on rehearing.

  **B.**  **The Treating Source Rule**

  The SSA has promised minor SSI claimants that it will "consider all relevant evidence in [the] case record" when determining disability, 20 C.F.R. § 416.924(a), and that it "will evaluate every medical opinion [it] receive[s]" *id.* § 416.927(c).[2] *See also id.* § 416.927(b) (establishing that the SSA "will always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence"). For disability claims filed before March 27, 2017, an ALJ must give special consideration to medical opinions from a claimant's treating medical source. *See id.* § 416.927. As relevant to this rule, medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [their] symptoms, diagnosis and prognosis, what [they] can still do despite impairment(s), and [their] physical or mental restrictions." *Id.* § 416.927(a)(1). Acceptable medical sources include "[l]icensed physician[s] (medical or osteopathic doctor[s])" and "[l]icensed psychologist[s]," among other medical professionals, but not "school teachers" or "counselors[.]" *Id.* § 416.902(a)(1)–(2), (j)(2). A "[t]reating source" is an "acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Id.* § 416.927(a)(2).

---

[2]  The SSA regulations in 20 C.F.R. § 416.927 apply to SSI claims filed before March 27, 2017, and are therefore the relevant regulations in this case.

Under the treating source rule, an ALJ must give controlling weight to a treating source's opinion regarding the nature and severity of a claimant's condition or impairment if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" *Id.* § 416.927(c)(2); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (same); *see also Gentry*, 741 F.3d at 727 (holding that the treating source rule applies to opinions regarding the claimant's functional capacity). The rationale behind the rule is that a treating source's opinion is most likely "to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." 20 C.F.R. § 416.927(c)(2).

A finding that a treating source's opinion is not entitled to controlling weight—because it is not well-supported by medically acceptable evidence and techniques or because it is inconsistent with the substantial evidence in the record—does not mean that the opinion should be rejected entirely. "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4 (July 2, 1996). In weighing a non-controlling treating source's opinion, the ALJ must consider the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record, the specialization of the treating source, and any other relevant factors. *Gentry*, 741 F.3d at 727 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)); 20 C.F.R. § 416.927(c)(2)–(6). "The ALJ need not perform an exhaustive, step-by-step analysis of each factor; she need only provide 'good reasons' for both her decision not to afford the [treating source's] opinion controlling weight and for her ultimate weighing of the opinion."

*Biestek v. Comm'r of Soc. Sec.*, 880 F.3d 778, 785 (6th Cir. 2017), *aff'd sub nom. Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). Those reasons must be "supported by the evidence in the case record[ ] and . . . sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5.

Williams initially argued that the ALJ violated the treating source rule with respect to Dr. Berberich and Centerstone by only analyzing a recommendation letter from Dr. Berberich to T.D.B., Jr.'s school district, "wholly fail[ing] to discuss Dr. Berberich's copious treatment notes and [other] assessments of T.D.B., Jr.[,]" and "fail[ing] to assign a weight finding to . . . Centerstone treatment records . . . ." (Doc. No. 21, PageID# 846, 847.) The Commissioner responded that the treating source rule only applies to medical opinions and that neither Dr. Berberich's letter nor the Centerstone treatment records qualify as opinions because the letter does not contain any judgments about the nature and severity of T.D.B., Jr.'s impairments and the counselors at Centerstone do not qualify as acceptable medical sources. (Doc. No. 25.) Williams's reply conceded that the treating source rule may not apply to the Centerstone treatment records and that Dr. Berberich's letter "was not intended to address and did not begin to address the totality and severity of all of T.D.B., Jr.'s issues . . . ." (Doc. No. 27, PageID# 891.) However, Williams has continued to argue that the ALJ violated the treating source rule by completely failing to consider a 2016 evaluation from Dr. Berberich expressing his opinions regarding T.D.B., Jr.'s functional limitations. (Doc. No. 27.)

Specifically, the record contains a psychiatric diagnostic evaluation of T.D.B., Jr., that Dr. Berberich completed on September 16, 2016. (AR 744–51.) That evaluation includes diagnoses, testing results, and Dr. Berberich's impressions of T.D.B., Jr.'s symptoms and

impairments, including T.D.B., Jr.'s "impairments in functioning . . . ." (AR 745.) For example, the evaluation includes the following statements from Dr. Berberich:

> **Symptoms/Impairments**
>
> [T.D.B., Jr.] is experiencing apparent difficulty controlling the amount of time spent in worry (3-Moderate), he is becoming more argumentative with adults (3-Moderate), he spends more time trying to avoid responsibility than attempting to overcome inaction (4-Severe), avoids tasks requiring sustained attention (4-Severe), becoming easily annoyed especially with academic work and those associated with keeping him on task, (3-Moderate) careless mistakes in classwork (4-Severe), decreasing self-esteem (4-Severe), continued erosion of his already impaired concentration (4-Severe) and difficulty sustaining focus (4-Severe).
>
> **Impairments**
>
> Subsequent impairments in functioning include: achievement below intellectual ability where it once was above based on progress noted on school reports (3-Moderate), developing disrespect and argumentativeness when confronted by school officials (3-Moderate), developing disinterest and lack of motivation (3-Moderate), anger and shame appear to prohibit discussion openly (3-Moderate) and test anxiety (4-Severe).
>
> **Mental Status**
>
> [T.D.B., Jr.] appears his stated age. He was oriented for place. During sessions his attention would wane often due to a distraction[.] His affect was appropriate. Mood was mildly anxious. His presentation during his sessions depicted a polite generally responsive person who was cooperative and generally pleasant. His eye contact was fair. His speech was modulated and his responses appropr[i]ate to the questions asked. As for immediate recall [T.D.B., Jr.'s] inability to recall recently learned material, his incomplete recall or seemingly confabulated recall of material demonstrated either expressive and or receptive problems or both. While these errors may point to a more p[e]rvasive neurological dysfunction, it would seem more likely to stem from an attention/focus/distractability set of issues. Remote memory was similarly impaired as indicated by corrections in recall by his mother. Occas[]ionally he became restless during the sessions, but when redirected he responded appropriately. Conceptual disorganization did not appear to be an issue. [T.D.B., Jr.] did not indicate any significant preoccupations during interview. He denied ever having had any type [of] hallucinations. While [T.D.B., Jr.] admitted to having problems both at school and at home, his judgement as to the source of these problems was focused away from himself. Overall it seemed that [T.D.B., Jr.'s] judgment is heavily influenced by the emotions of the moment. He appears to be overwhelmed emotionally by conflict which results in further erosion of his capacity to make appropriate decisions. His distractability appears to interfere with his attention resulting in quick shifts in focus away from the tasks at hand resulting

> in frustration, [T.D.B., Jr.'s] tolerance of frustration is lacking. His moods, even during the sessions, seemed to be inconsistent. Although the mood shif[t]s were b[]ar[e]ly perceptible, his awareness of his mother being in the room seemed to assist him in maintaining control.

(AR 745–46.)

The Commissioner has not argued that this evaluation is not subject to the treating source rule, and the Magistrate Judge finds that it is properly considered a treating source opinion. The record shows, and the parties do not dispute, that Dr. Berberich is a licensed psychologist who had an ongoing treatment relationship with T.D.B., Jr. (AR 55, 620–38, 751); *see* 20 C.F.R. §§ 416.902(a)(2), 416.927(a)(2). Dr. Berberich's evaluation contains statements reflecting his judgment about the nature and severity of T.D.B., Jr.'s impairments. *See* 20 C.F.R. § 416.927(a)(1). For example, Dr. Berberich discusses T.D.B., Jr.'s symptoms and impairments at length, expressly characterizing several of them as "[s]evere." (AR 745.) He also discusses T.D.B., Jr.'s diagnoses, functional abilities, mental restrictions, and psychological testing results. (AR 745–749.) The ALJ only briefly alluded to this opinion, citing it in support of her finding that T.D.B., Jr.'s "mental status exams consistently documented cooperative attitude and being generally pleasant." (AR 33.) The ALJ did not engage in any further discussion or analysis of Dr. Berberich's opinions based on the 2016 evaluation.

The Sixth Circuit has held that an ALJ's total failure to address a treating source's opinion violates the treating source rule and is grounds for reversal and remand. *See Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747–50 (6th Cir. 2007). In *Bowen v. Commissioner of Social Security*, the court explained that the reasons such an error "counsels strongly in favor of a remand" is that neither the claimant nor the reviewing court can "be certain that the ALJ was aware that [the overlooked] assessment represented that of a treating source" and cannot "know why the ALJ

11
Case 3:19-cv-00064 Document 29 Filed 02/14/20 Page 11 of 15 PageID #: 909

disregarded" it. *Id.* at 748, 749. That is the case here, where the ALJ offered no explanation whatsoever for her failure to address Dr. Berberich's 2016 opinions in her disability analysis.[3]

The Commissioner has not specifically addressed the ALJ's failure to analyze Dr. Berberich's 2016 evaluation as a treating source opinion. Instead, the Commissioner argues generally that an ALJ is not required to discuss every piece of evidence in the record and that she "can consider all of the evidence without directly addressing all of it." (Doc. No. 25, PageID# 874.) These broad arguments miss the mark, and the only authorities the Commissioner cites in support are distinguishable and do not excuse the ALJ's failure to comply with the treating source rule in this case. *Boseley v. Commissioner of Social Security Administration*, 397 F. App'x 195 (6th Cir. 2010), did not concern a treating source opinion and, similarly, the court in *Kornecky v. Commissioner of Social Security*, 167 F. App'x 496, 506 (6th Cir. 2006) (per curiam), expressly found that the opinion at issue was not from a treating source.

Accordingly, the Court should find that the ALJ's failure to address Dr. Berberich's 2016 opinion violated the treating source rule and that her decision therefore lacks the support of substantial evidence regardless of whether it may be justified by other evidence in the record. *See Miller*, 811 F.3d at 833.

---

[3] The ALJ's discussion of Dr. Berberich's opinion evidence addresses only his 2017 letter:

> In August 2017, the claimant's psychologist, Robert Berberich EdD, wrote a letter to the claimant's school system reporting the claimant had been diagnosed with attention deficit disorder and recommended early intervention in academic modifications and counseling for the claimant finding they may help provide the basis for a stable working relationship with the claimant and his teachers. (Exhibits 12F/15F/16F.) This letter was considered as part of the overall evidence; however, it has not been given any significant weight, because it fails to provide an opinion regarding functional limitations.

(AR 28–29.)

12
Case 3:19-cv-00064 Document 29 Filed 02/14/20 Page 12 of 15 PageID #: 910

### C.     The Harmless Error Exception

An ALJ's failure to comply with SSA rules mandates remand unless that failure amounts to "harmless error." *Gentry*, 741 F.3d at 723; *see also Bowen*, 478 F.3d at 747 (recognizing a "harmless-error exception" to the treating source rule). The Sixth Circuit has explained that an ALJ's violation of the treating source rule is only harmless if:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of [20 C.F.R. § 927(c)(2)] . . . even though she has not complied with the terms of the regulation.

*Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (second alteration in original) (quoting *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)). The Commissioner has not argued that the ALJ's failure to address Dr. Berberich's 2016 opinion was harmless, and the Magistrate Judge finds that it was not. First, there is no indication that the opinion was patently deficient; to the contrary, the lengthy opinion appears to be thorough and, among other things, incorporates the results of psychological testing. Second, the ALJ did not make findings consistent with Dr. Berberich's 2016 opinion. For example, the ALJ found that T.D.B., Jr., had "less than marked limitation[s] in attending and completing tasks[,]" based, in part, on evidence that he had only "moderate limitations in sustaining concentration." (AR 31, 32.) But Dr. Berberich concluded that T.D.B., Jr.'s "difficulty sustaining focus" and "continued erosion of his already impaired concentration" were "[s]evere . . . ." (AR 745.) Finally, the ALJ's overall analysis does not meet the goals of 20 C.F.R. § 416.927(c)(2) because it "leaves this Court without a clear understanding of why the ALJ" credited Dr. Berberich's opinion as to T.D.B., Jr.'s cooperative attitude and generally pleasant demeanor but failed to even consider his opinions regarding T.D.B., Jr.'s functional limitations. *Cole*, 661 F.3d at 940. As the *Cole* court explained,

> [i]t may be true that, on remand, the Commissioner reaches the same conclusion as to [the claimant's] disability while complying with the treating physician rule and the good reasons requirement; however, [the claimant] will then be able to understand the Commissioner's rationale and the procedure through which the decision was reached.

*Id.*

Because Williams and T.D.B., Jr., are entitled to this procedural protection, the ALJ's failure to address Dr. Berberich's 2016 opinion was not harmless and this case should be remanded for rehearing.

### D. Williams's Remaining Arguments

Because this case should be remanded to the ALJ for consideration of Dr. Berberich's 2016 opinion, the Court need not address Williams's remaining arguments that the ALJ improperly evaluated T.D.B., Jr.'s subjective complaints and improperly weighed other evidence regarding T.D.B., Jr.'s functional limitations. On remand, the ALJ will no doubt need to reevaluate T.D.B., Jr.'s subjective complaints and functional limitations against the backdrop of a complete record that includes Dr. Berberich's 2016 opinion. *See Wilson v. Colvin*, No. 3:13-CV-84, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014). If necessary, Williams may raise these issues again after remand. *See id.*

## IV. Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that Williams's motion for judgment on the administrative record (Doc. No. 20) be GRANTED, that the ALJ's decision be REVERSED, and that this case be REMANDED for rehearing and further administrative proceedings consistent with this Report and Recommendation.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v.*

*Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 14th day of February, 2020.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge